UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| 6344 LEGEND FALLS TRUST, a Nevada Trust, | )<br>)<br>) |
| Plaintiff, | ) Case No.: 2:22-cv-01023-GMN-NJK<br>) |
| vs. | ) **ORDER**<br>) |
| NATIONAL DEFAULT SERVICING CORPORATION, an Arizona Corporation, *et al.*, | )<br>)<br>)<br>) |
| Defendants. | )<br>) |

Pending before the Court is the Motion to Dismiss the Amended Complaint, (ECF No. 15), filed by Defendants National Default Servicing Corporation ("NDSC") and Specialized Loan Servicing LLC ("SLS") (collectively, "Defendants").

Also pending before the Court is the Motion to Expunge Lis Pendens, (ECF No. 16), filed by Defendants.  Plaintiff 6344 Legend Falls Trust ("Plaintiff") filed a Response to both motions, (ECF No. 22), to which Defendants filed a Reply, (ECF No. 23).

Also pending before the Court is Plaintiff's Motion to Remand, (ECF No. 28). Defendants filed a Response, (ECF No. 29), and Plaintiff filed a Reply, (ECF No. 30).

For the reasons discussed below, the Court **DENIES** Plaintiff's Motion to Remand, **GRANTS** Defendants' Motion to Dismiss, and **GRANTS** Defendants' Motion to Expunge Lis Pendens.

I.    **BACKGROUND**

This case stems from a dispute concerning real property located at 6344 Legend Falls Street, North Las Vegas, Nevada 89081 (the "Property"). (Mot. Dismiss ("MTD") 2:17–18, ECF No. 15).  The Property was the subject of a prior lawsuit in state court. (*See* MTD 2:2–12);

(State Court Am. Findings of Fact ("FOF") and Conclusions of Law ("COL"), Ex. G to MTD, ECF No. 15-7). The Court thus looks at the parties' filings, in addition to the state court's factual findings from the prior litigation, for the relevant procedural history and background in this matter.

On January 26, 2005, Jasvinder Sidhu executed a deed of trust (the "Deed of Trust") that was recorded against the Property in first position. (MTD 2:18–21). Mortgage Electronic Registration Systems, Inc. ("MERS") was the beneficiary of the Deed of Trust, acting solely as nominee for the lender, Republic Mortgage LLC. (*Id.* 2:21–3:1). In 2010, MERS assigned the Deed of Trust to BAC Home Loans Servicing, LP f/k/a Countrywide Home Loans Servicing, LP. (*Id.*). The assignment of the Deed of Trust was recorded on March 18, 2010. (State Court FOFs and COLs ¶ 7, Ex. G to MTD). Bank of America, N.A. ("BANA") thereafter merged with BAC Home Loans Servicing on July 1, 2011, thus becoming the sole beneficiary of the Deed of Trust. (*Id.* ¶ 8).

A Notice of Default was recorded against the Property on January 28, 2010, but a Notice of Recission of the Notice of Default was recorded on July 28, 2011. (*See* MTD 3:2–5); (Notice of Default, Ex. C to MTD, ECF No. 15-3); (Notice of Recission, Ex. D to MTD, ECF No. 15-4).[1]

In January 2012, Jasvinder Sidhu filed for bankruptcy in the United States Bankruptcy Court for the District of Nevada. (State Court FOFs and COLs ¶ 10, Ex. G to MTD). The bankruptcy trustee filed a motion to sell the property, which the bankruptcy court denied. (*Id.* ¶¶ 11–14). Instead, the bankruptcy court ordered the bankruptcy trustee to execute and record a quitclaim deed to BANA; BANA, however, rejected the quitclaim deed. (*Id.* ¶¶ 14–16).

---

[1] A second Notice of Recission of Notice of Default was filed on December 12, 2018. (*See* MTD 3:14–17; Notice of Recission, Ex. I to MTD, ECF No. 15-9).

While the bankruptcy proceedings were ongoing, Nevada Association Services, Inc. ("NAS"), as agent for Pecos Park Sunflower (the "HOA"), recorded a notice of delinquent assessment lien, a notice of default and election to sell, and a notice of foreclosure sale, noting that the total amount due to the HOA was $3,601.74. (*Id.* ¶¶ 30–31). The foreclosure sale was set for March 1, 2013. (*Id.*). BANA then contacted NAS to request the super-priority amount, but NAS refused to provide a payoff amount. (*Id.* ¶¶ 33–34). Using a statement of account for another property subject to the HOA, BANA tendered $927.83 to the HOA, which would account for nine months of the HOA's monthly assessment. (*Id.* ¶¶ 35–37). NAS rejected delivery of the tender and proceeded with the foreclosure sale. Thereafter, a foreclosure deed was recorded against the Property, stating that the Property was sold to Plaintiff on March 1, 2013, for $4,100. (*Id.* ¶ 39).

On April 26, 2021, following lengthy litigation, the state court entered its Amended Findings of Fact and Conclusions of Law which, among other things, found that (1) the Deed of Trust recorded on January 26, 2005 against the Property was not extinguished by the foreclosure sale conducted on March 1, 2013, and (2) title to the Property is vested to Plaintiff, subject to the Deed of Trust. (*See generally* State Court FOFs and COLs, Ex H. to MTD). The state court additionally rejected Plaintiff's claims for quiet title and declaratory relief. (*Id.*).

On October 22, 2021, a second Notice of Default was recorded against the Property. (MTD 3:17; Notice of Default, Ex. J to MTD, ECF No. 15-10). Thereafter, on December 20, 2021, SLS was named beneficiary under the Deed of Trust, as successor-in-interest to Bank of America. (MTD 3:17-19; *see also* Assignment of Deed of Trust, Ex. K to MTD, ECF No. 15-11).

Plaintiff filed its lawsuit in the Eighth Judicial District Court for the State of Nevada on April 8, 2022. (MTD 4:2–3). On June 28, 2022, Defendants removed this action to federal court, alleging diversity jurisdiction. (*Id.* 4:3). On July 18, 2022, Plaintiff filed its First

Amended Complaint ("FAC"). (*See generally* FAC, ECF No. 12).  Plaintiff's FAC contends that this Court "does not have jurisdiction over this matter . . . because there is no diversity of citizenship between the parties," and thus "[v]enue and jurisdiction . . . are proper" in state court. (FAC 4:26–5:2).  Specifically, Plaintiff alleges it is a citizen of Arizona, Delaware, and Nevada, NDSC is a citizen of Arizona, and Nevada Legal News, LLC ("NLN") is a citizen of Nevada. (FAC 1:25–2:27).

Apart from raising its jurisdictional challenge, Plaintiff alleges that "the promissory note, in which the deed of trust purportedly secures, was endorsed in blank," and that Defendants "are not in possession of the original promissory note" and thus "have no rights or interests in the [D]eed of [T]rust and have no authorization to enforce . . . a non-judicial foreclosure sale[.]" (FAC ¶ 5).  Plaintiff additionally alleges that "the amount due pursuant to the promissory note" became "due as a matter of law on or about February 1, 2010," and SLS, including its predecessors-in-interest, was required to foreclose on the Deed of Trust as mandated by Nevada Revised Statute ("NRS") 106.240.  Plaintiff thus contends that because SLS, or its predecessors-in-interest, failed to foreclose, the Deed of Trust is "expunged and/or discharged as a matter of law pursuant to NRS 106.240." (*Id.* ¶ 6).  Accordingly, Plaintiff submits the following causes of action: (1) quiet title against SLS; (2) declaratory judgment against NDSC and SLS; (3) injunctive relief against all defendants; (4) wrongful foreclosure against all defendants; and (5) violation of Nevada Revised Statutes ("NRS") 107.028 against NDSC and NLN. (*See generally* FAC).  Defendants now move to dismiss, and Plaintiff moves to remand.

## II.     LEGAL STANDARD

### A.     Motion to Remand

Federal courts are courts of limited jurisdiction, possessing only those powers granted by the Constitution and by statute. *See United States v. Marks*, 530 F.3d 799, 810 (9th Cir. 2008).

"If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c). Generally, district courts have subject matter jurisdiction over civil actions in which: (1) the claims arise under federal law; or (2) where no plaintiff is a citizen of the same state as a defendant and the amount in controversy exceeds $75,000.00. *See* 28 U.S.C. §§ 1331, 1332(a).

Diversity jurisdiction requires that each plaintiff in a case be a citizen of a different state than each defendant. *See* 28 U.S.C. § 1332(a). When determining whether there is complete diversity, district courts may disregard the citizenship of a non-diverse defendant who has been fraudulently joined. *See Grancare, LLC v. Thrower by and through Mills*, 889 F.3d 543, 548 (9th Cir. 2018). "A defendant invoking federal court diversity jurisdiction on the basis of fraudulent joinder bears a 'heavy burden' since there is a 'general presumption against finding fraudulent joinder.'" *Id.* (citing *Hunter v. Philip Morris USA*, 582 F.3d 1039, 1046 (9th Cir. 2009)). "There are two ways to establish fraudulent joinder: (1) actual fraud in the pleading or jurisdiction facts, or (2) inability of the plaintiff to establish a cause of action against the non-diverse party in state court." *Id.* (quotation marks omitted).

A civil action brought in state court may be removed to a federal district court if the district court has original jurisdiction over the matter. 28 U.S.C. § 1441(a). The defendant asserting the removal must prove it is proper, and there is a strong presumption against removal jurisdiction. *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992). "Federal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance." *Id.*

**B. Motion to Dismiss**

Dismissal is appropriate under Rule 12(b)(6) where a pleader fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A pleading must give fair notice of a legally cognizable claim and the grounds on which it rests, and although a court must take all factual allegations as true, legal conclusions

couched as factual allegations are insufficient. *Twombly*, 550 U.S. at 555. Accordingly, Rule 12(b)(6)) requires "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* This standard "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

If a court grants a motion to dismiss for failure to state a claim, leave to amend should be granted unless it is clear that the deficiencies of the complaint cannot be cured by amendment. *DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992). Pursuant to Rule 15(a), the court should "freely" give leave to amend "when justice so requires," and in the absence of a reason such as "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of the amendment, etc." *Foman v. Davis*, 371 U.S. 178, 182 (1962).

### III.      DISCUSSION

Because the Motion to Remand challenges whether the Court has subject-matter jurisdiction over the case, the Court begins its discussion there.

#### A.   Motion to Remand

Plaintiff alleges that it is a citizen of Arizona, Delaware, and Nevada, Defendant NDSC is a citizen of Arizona, and Defendant NLN is a citizen of Nevada. Thus, Plaintiff states that complete diversity does not exist because Plaintiff and Defendants share Arizona and Nevada citizenship. (FAC 1:25–2:27); (Mot. Remand 6:6–8). Defendants contend that (1) Plaintiff's purported Arizona member was not incorporated until after removal and the filing of Plaintiff's

FAC, and thus Plaintiff should not be considered a citizen of Arizona for purposes of diversity, and (2) the Court should ignore the citizenship of NDSC and NLN because they were fraudulently joined and are nominal parties. (Resp. Mot. Remand 2:10–22, ECF No. 29).

### i. Plaintiff's Citizenship

It is well established that diversity is determined "at the time the action is removed to federal court." *Miller v. Grgurish*, 763 F.2d 372, 373 (9th Cir. 1985); *see also Strotek Corp. v. Air Transp. Ass'n of Am.*, 300 F.3d 1129, 1131 (9th Cir. 2002) (holding that complete diversity of citizenship "is determined (and must exist) as of the time the complaint is filed and removal is effected"); *Price v. AMCO Ins. Co.*, No. 17-cv-01053, 2017 WL 4511062, at *2 (E.D. Cal. Oct. 10, 2017) ("[D]iversity jurisdiction requires complete diversity of citizenship both at the time the action was commenced in state court and at the time of removal."). Defendants argue that Plaintiff's alleged Arizona citizenship is "clearly an attempt to destroy diversity." (Resp. Mot. Remand 5:9–11; 6:10–12). Specifically, Plaintiff's Arizona member, KBJL Investments Corp. ("KBJL"), "was incorporated on August 18, 2022," one month after Plaintiff filed its FAC, and after Defendants removed the case to federal court. (*Id.* 6:16–19).

Plaintiff does not refute that its Arizona member was incorporated after removal and after filing the FAC. Instead, Plaintiff argues that Defendants "are clearly in error to even imply that if there is diversity at the time the action is filed or removed, there can never be any challenges to subject matter jurisdiction thereafter and that the District Court can enter a judgment even if diversity does not exist at the time judgment is entered." (Reply, 2:27–3:4, ECF No. 30). Plaintiff misconstrues legal authority regarding diversity jurisdiction. Although the joinder of a non-diverse indispensable party following removal divests federal courts of subject-matter jurisdiction, *see* 28 U.S.C. § 1447(e), "federal jurisdiction is not defeated if one party, subsequent to the filing of a complaint, becomes a citizen of the same state as his opponent." *E.R. Squibb & Sons, Inc. v. Lloyd's Companies*, 241 F.3d 154, 163–64 (2d Cir.

2001); *see also Smith v. Sperling*, 354 U.S. 91, 93 n. 1 (1957) (noting that "jurisdiction, once attached, is not impaired by a party's later change in domicile").  In other words, while the joinder of a non-diverse party may defeat diversity, changes in citizenship to a party in the action does not.

The Court thus finds that Plaintiff's allegation in the FAC that it is a citizen of Arizona relied on the citizenship of a not-yet-formed corporation.  Such action is, at best, a gross error on Plaintiff's part; at worst, it is an intentional misrepresentation meant to deceive the Court.  Accordingly, the Court finds that, for purposes of diversity jurisdiction, Plaintiff's purported Arizona citizenship may be ignored.

### ii.    Defendants NDSC and NLN

Defendants additionally argue that the Court should disregard the citizenship of NDSC and NLN because they were fraudulently joined. (Resp. Mot. Remand 2:10–22, ECF No. 29). Defendants carry the burden of showing that a party is fraudulently joined and may allege, "(1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the non-diverse party in state court." *Grancare,* 889 F.3d at 548 (quotation marks omitted).  In support of its fraudulent joinder claims, "[d]efendants . . . are permitted to make a showing of facts indicating fraudulent joinder." *Knutson v. Allis-Chalmers Corp.*, 385 F.Supp.2d 983, 996 (D. Nev. 2005) (citing *Ritchey v. Upjohn Drug Co.*, 139 F.3d 1313, 1318 (9th Cir. 1998)); *see also Morris v. Princess Cruises, Inc.*, 236 F.3d 1061, 1068 (9th Cir. 2001) ("Fraudulent joinder claims may be resolved by 'piercing the pleadings' and considering summary judgment-type evidence[.]").

Additionally, although courts may look to a showing of facts in conducting a fraudulent joinder analysis, the burden on the defendant to prove fraudulent joinder is higher than the burden required to succeed on a motion to dismiss or a motion for summary judgment. *Morris*, 236 F.3d at 1067 ("Joinder of a non-diverse defendant is deemed fraudulent . . . if the plaintiff

fails to state a cause of action against a resident defendant, and the failure is obvious according to the settled rules of the state."); *see also Davis v. Prentiss Properties Ltd., Inc.*, 66 F.Supp.2d 1112, 1114 (C.D. Cal. 1999) ("To constitute fraudulent joinder, the non-diverse claim must not only be unsuccessful, it must be untenable *ab initio*.").

The Court previously considered, without deciding conclusively, Defendants' fraudulent joinder argument. (*See generally* August 12, 2022, Order, ECF No. 21).  In the August 12, 2022, Order, the Court noted that Defendants "may meet their burden of showing Plaintiff fraudulently joined Defendants NDSC and NLN." (*Id.* 4:1–2).  The Court addressed each of Plaintiff's claims related to NDSC and NLN and noted, *inter alia*, that "the Court tentatively agrees with Defendants' assertion that Plaintiff does not provide factual allegations that Defendants NDSC and NLN have an interest in the property in question"; "tentatively agrees that Plaintiff's declaratory relief claim may be unsupported by law"; "injunctive relief cannot be brough as an independent claim, but can only be sought as a remedy"; and, "the Court tentatively agrees that Plaintiff may not have standing to bring its wrongful foreclosure sale because a foreclosure sale has not taken place." (*Id.* 4:2–17).  The Court additionally noted that, despite ordering briefing from both parties, Plaintiff failed to adequately address any of Defendants' arguments in support of removal. (*Id.*)

Apparently, Plaintiff sought to remedy the deficiencies in its Complaint by alleging a new claim against NDSC and NLN under NRS 107.028. (FAC 8:7–22).  But Plaintiff's FAC did not fix the inherent deficiencies in its other claims against NDSC and NLN—deficiencies the Court expressed its concern over in its August 12, 2022, Order.  Because the Court finds that Plaintiff is not a citizen of Arizona, diversity exists between NDSC and Plaintiff.  Thus, the Court considers whether NLN was fraudulently joined.  Plaintiff alleges three claims against NLN: (1) injunctive relief; (2) wrongful foreclosure; and (3) violation of NRS 107.028.  All three claims fail *ab initio*.

First, injunctive relief is a remedy, not an independent cause of action. *See, e.g.*, *Lorona v. Ariz. Summit Law School, LLC*, 151 F.Supp.3d 978, 997 (D. Ariz. 2015) ("[Declaratory and injunctive relief] are remedies, not independent causes of action.") (citation omitted); *7321 Wandering Street Trust v. New Residential Mortgage Loan Trust 2020-NPL2*, No. 2:21-cv-01193, 2022 WL 717577, at *2 (D. Nev. Mar. 10, 2022) (noting that "injunctive relief is not an independent cause of action; rather it is a remedy for another viable cause of action"); *Ward v. City of Henderson, Nevada*, 2:20-cv-02331, 2021 WL 2043937, at *5 n. 46 (D. Nev. May 21, 2021) (noting that "it is well-settled that a claim for 'injunctive relief' standing alone is not a cause of action; injunctive relief is a remedy") (listing cases).

Second, as this Court alluded to in its August 12, 2022, Order, and as Defendants note in various briefings, a claim for wrongful foreclosure requires that (1) defendants exercised a power of sale or foreclosed on plaintiff's property, and (2) at the time the power of sale was exercised, there was no breach of condition or failure of performance by [the plaintiff] that would have authorized foreclosure. *See Turbay v. Bank of Am., N.A.*, 2:12-cv-1367, 2013 WL 1145212, at *4 (D. Nev. Mar. 18, 2013) (citing *Collins v. Union Fed. Sav. & Loan Ass'n*, 662 P.2d 610, 623 (Nev. 1983)). Defendants note, and Plaintiff does not refute, that no foreclosure sale has occurred. Rather, Plaintiff argues only that a foreclosure sale may occur in the future. (FAC ¶ 30 ("To the extend Defendants proceed with a foreclosure sale . . . the sale would be wrongful.")). Because Plaintiff cannot allege a wrongful foreclosure sale until a foreclosure sale occurs, Plaintiff's claim is untenable. *See Davis*, 66 F.Supp.2d at 1114.

Plaintiff's final claim against NLN also fails. NRS 107.028 governs who may serve as a trustee and the limitation of a trustee's power. Plaintiff notes in the FAC that NDSC, "by recording the notice(s) of default and the corresponding notice of trustee's sale, and thereafter taking the steps, together with [NLN], to move forward with a non-judicial foreclosure sale on a discharged/expunged deed of trust," violated NRS 107.028. (FAC ¶ 33). Then, in its Motion

to Remand, Plaintiff argues that NLN "is the entity that is slated to actually conduct the wrongful foreclosure sale," and therefore violates NRS 107.028.

Plaintiff's first theory of liability fails because the FAC does not sufficiently allege that an action taken by NLN violates NRS 107.028; instead, Plaintiff appears to argue that NDSC's actions are imparted implicate NLN. Plaintiff's argument that NLN is liable under NRS 107.028 because NLN is the entity that will conduct the foreclosure sale also fails. As mentioned, no foreclosure sale has occurred. Plaintiff therefore seeks to hold NLN liable under NRS 107.028 because it may in the future conduct a foreclosure sale that has not occurred. However, Plaintiff cites no legal authority holding that a trustee's potential future conduct could serve as a basis for finding the trustee violated NRS 107.028.

Plaintiff's second theory of liability fails because a trustee is in violation of NRS 107.028 if the trustee does not act impartially and in good faith. *See* Nev. Rev. Stat. § 107.028 ("The trustee shall act impartially and in good faith with respect to the deed of trust and shall act in accordance with the laws of this State."). Plaintiff does not allege that NLN failed to act impartially and in good faith or failed to act in accordance with state law. Thus, the Court finds that there is no "possibility that a state court would find that the complaint states a cause of action against" NLN. *See Hunter v. Philip Morris USA*, 582 F.3d 1039, 1046 (9th Cir. 2009) (quotation marks omitted). Accordingly, the Court DENIES Plaintiff's Motion to Remand.

### B. Motion to Dismiss

Because the Court finds that it has subject-matter jurisdiction, the Court considers the merits of Defendants' Motion to Dismiss.

#### i. Quiet Title & Declaratory Judgment

In Nevada, a quiet title action may be brought "by any person against another who claims an estate or interest in real property, adverse to the person bringing the action, for the purpose of determining such adverse claim." Nev. Rev. Stat. § 40.010. To have standing to

assert a quiet title claim, a plaintiff must have a current claim to the land in dispute. *See, e.g.*, *Daly v. Lahontan Mines Co.*, 151 P. 514, 516 (Nev. 1915) ("An action to quiet title is based upon the presumption that the plaintiff has title."). "A plea to quiet title does not require particular elements, but each party must plead and prove his or her own claim to the property in question." *Chapman v. Deutsche Bank Nat'l Trust Co.*, 302 P.3d 1103, 1106 (Nev. 2013) (citations omitted).

Plaintiff presents two theories to support its quiet title claim. First, Plaintiff contends that the Deed of Trust was extinguished under NRS 106.240, which specifies:

> The lien . . . created of any mortgage or deed of trust upon any real property, appearing of record, and not otherwise satisfied or discharged of record, shall at the expiration of 10 years after the debt secured by the mortgage or deed of trust according to the terms thereof or any recorded written extension thereof become wholly due, terminate, and it shall be conclusively presumed that the debt has been regularly satisfied and the lien discharged.

Plaintiff contends that the Notice of Default recorded on January 28, 2010, accelerated the loan owed under the Deed of Trust, and therefore, the balance became wholly due. Plaintiff separately purports that the original borrowers' bankruptcy, which was filed on January 25, 2012, accelerated the debt owed under the Deed of Trust, thus becoming "wholly due" under NRS 106.240.

Defendants first argue that claim preclusion bars Plaintiff from asserting these causes of action. "[C]laim preclusion applies to all grounds of recovery that were or could have been brought in the first case." *Five Star Capital Corp. v. Ruby*, 194 P.3d 709, 713 (Nev. 2008). A party asserting claim preclusion must establish that: (1) the parties or their privies are the same, (2) the final judgment is valid, and (3) the subsequent action is based on the same claims or any part of them that were or could have been brought in the first case. *Id.* (internal citations and quotation marks omitted).

///

As to the first element, SLS, as successor-in-interest to BANA, is entitled to the protection of claim preclusion in a quiet title action. Regarding the second element, whether final judgment is valid, neither party challenges the validity of the state court's April 26, 2021, ruling. Instead, Plaintiff contends that the Court should ignore the ruling of the state court because the state court "made a prediction" since the Nevada Supreme Court had not previously weighed in on the issue. (Resp. MTD 8:4–13 (quotation marks omitted)). That the Nevada Supreme Court has not weighed in on the issue does not, however, make the state court's judgment invalid. Indeed, a trial court is expected to make reasonably calculated "predictions" on issues of first impression. The Court therefore finds that a valid, final judgment exists.

Concerning the third element, the Court finds this element is also satisfied. Not only could the claims to quiet title and declaratory judgment have been legally presented in the prior state court action, Plaintiff in fact raised these claims in the state court litigation. Plaintiff has thus not demonstrated why "this court should disrupt sound claim preclusion principles[.]" *Five Star*, 194 P.3d at 716. The Court finds that "this is the exact type of case for which claim preclusion is necessary—to prevent a party from continually filing additional lawsuits until it obtains the outcome it desires by merely asserting an additional claim for relief[.]" *Id.* Therefore, the Court declines to consider Plaintiff's argument that the Deed of Trust was extinguished under NRS 106.240 because that argument is barred by claim preclusion. *Id.*

Plaintiff's second theory for quiet title and declaratory judgment posits that SLS is not in possession of the original promissory note, thereby divesting SLS of any rights or interests in the Deed of Trust. But the FAC fails to allege facts supporting this allegation; instead, Plaintiff notes only that financial institutions "routinely and frequently sell and transfer [bad] promissory notes," (FAC 3:11–14), and that the Deed of Trust "is a rogue instrument that secures nothing." (*Id.* 3:19–21).

With no factual allegations to hinge Plaintiff's arguments on, the Court finds that Plaintiff's argument is unsupported under Nevada law.  First, under Nevada law, it is presumed that a note is transferred with the deed of trust. *See, e.g.*, *Jones v. U.S. Bank Nat'l Ass'n as Tr. for TBW Mortgage-Backed Pass-Through Certificates, Series 2006-03*, 460 P.3d 958, 962 (Nev. 2020) (noting a "general presumption that the note traveled with the deed of trust). Plaintiff has failed to proffer any evidence that convinces the Court to depart from this presumption.  Additionally, Plaintiff's "show-me-the-note" argument claiming the NDSC and SLS may not foreclose on the property without proffering the original promissory note has been "resoundingly rejected" by courts in Nevada. *Juntilla v. RESI Home Loans IV, LLC*, No. 2:12-cv-00790-MMD-PAL, 2013 WL 1819636, at *1 (D. Nev. Apr. 29, 2013).  "Although possession of the original promissory note is generally required to enforce the note, *see* NRS 104.3301, no such requirement exists to foreclose on a deed of trust.  Rather, the authority to foreclose on a deed of trust is established by the deed of trust or an assignment thereof." *Wilmington Sav. Fund Soc'y FSB as Tr. For Hilldale Tr. v. Deaver*, No. 80446, 2021 WL 1783666, at *1 (Nev. May 4, 2021) (citing *Edelstein v. Bank of N.Y. Mellon*, 286 P.3d 249, 260 (Nev. 2012)); *see also* Nev. Rev. Stat. § 107.0805(1)(b) (providing that an entity seeking to foreclose must only attest that it is the holder of the promissory note and "the current beneficiary of record").  Plaintiff's request for quiet title and declaratory judgment thus fails as a matter of law, and amendments to Plaintiff's claims would be futile.  Accordingly, the Court DISMISSES Plaintiff's quiet title and declaratory judgment causes of action without leave to amend.

### ii.   Injunctive Relief

Injunctive relief is a remedy, not an independent cause of action. (*Supra* 10:1–9). Accordingly, Plaintiff's injunctive relief cause of action is dismissed without leave to amend.

///

### iii. Wrongful Foreclosure

As discussed above, (*see supra* 10:10–20), Plaintiff cannot meet an essential element for a wrongful foreclosure claim. Accordingly, the Court DISMISSES Plaintiff's wrongful foreclosure cause of action without leave to amend.

### iv. Violation of NRS 107.028

NRS 107.028 requires, *inter alia*, that a trustee "act impartially and in good faith with regard to the deed of trust and shall act in accordance with the law[.]" In other words, to show that a trustee violated NRS 107.028, a plaintiff must, at minimum, allege facts that the trustee was not acting impartially and in good faith with regard to the deed of trust or was not acting in accordance with the law. In the FAC, Plaintiff alleges that NDSC, "by recording the notice(s) of default and the corresponding notice of trustee's sale, and thereafter taking the steps, together with Defendant [NLN] to move forward with a non-judicial foreclosure sale" violated NRS 107.028. (FAC ¶ 33). Thus, it appears that Plaintiff's NRS 107.028 hinges on its failed "split-the-note" argument; specifically, Plaintiff argues that because NDSC and SLS do not own possession of the original promissory note, they are not entitled to record a notice of default or move forward with a foreclosure sale, and that doing so violated their duties as a trustee under NRS 107.028.

Plaintiff's NRS 107.028 cause of action fails for two reasons. First, Plaintiff's "split-the-note" argument, which Plaintiff bases the NRS 107.028 violation on, has been rejected. Second, Plaintiff fails to plead facts showing that NLN and NDSC did not act impartially or in good faith. The Court thus finds that Plaintiff has failed to adequately plead a violation of NRS 107.028. Because Plaintiff's NRS 107.028 cause of action relies on an argument that the Court rejects as a matter of law, the Court additionally finds that leave to amend would be futile here. Accordingly, the Court DISMISSES Plaintiff's violation of NRS 107.028 cause of action without leave to amend.

     **C.**     **Motion to Expunge Lis Pendens**

A Notice of Pendency or a Lis Pendens is a "notice of an action affecting real property" which is pending in a judicial proceeding, including before this Court. *See* Nev. Rev. Stat. § 14.010(2). Because this Order dismisses all of Plaintiff's claims without leave to amend, the lis pendens no longer serves any purpose. *Am. Town Center v. Hall 83 Associates*, 912 F.2d 104, 110 (6th Cir. 1990) ("With the complaint dismissed, the notices of lis pendens no longer served any purpose."); *see also Wensley v. First Nat. Bank of Nevada*, 874 F.Supp.2d 957, 968 (D. Nev. 2012) (granting motion to expunge lis pendens after dismissing all claims without leave to amend). Accordingly, the Court GRANTS the Motion to Expunge Lis Pendens.

## IV.     CONCLUSION

**IT IS HEREBY ORDERED** that Plaintiff's Motion to Remand, (ECF No. 28), is **DENIED.**

**IT IS FURTHER ORERED** that Defendant's Motion to Dismiss, (ECF No. 15), and Motion to Expunge Lis Pendens, (ECF No. 16), are **GRANTED**.

**IT IS FURTHER ORDERED** that Defendants' Motion for Summary Judgment, (ECF No. 49), and Plaintiff's Motion for Summary Judgment, (ECF No. 51), are **DENIED as moot**.[2] Because the Court dismisses Plaintiff's First Amended Complaint without leave to amend, the Clerk of Court is instructed to close the case.

**DATED** this __29__ day of June, 2023.

_____
Gloria M. Navarro, District Judge
UNITED STATES DISTRICT COURT

---

[2] SLS filed its Motion for Summary Judgment on May 3, 2023. Thereafter, Plaintiff filed its Motion for Summary Judgment on the same day. Because the Court grants Defendant's Motion to Dismiss without leave to amend, the Court **DISMISSES** the parties' pending Motions for Summary Judgment as moot.